# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: | ) |
| Lonnie/Susan Miller | ) **JUDGE RICHARD L. SPEER** |
| Debtor(s) | ) Case No. 08-3345 |
| Lonnie Miller, et al. | ) (Related Case: 08-30460) |
| Plaintiff(s) | ) |
| v. | ) |
| Federal Deposit Ins. Co. | ) |
| Defendant(s) | ) |

## DECISION AND ORDER

This cause comes before the Court on the Parties' respective Motions for Summary Judgment. Previously, this Court had stayed the Defendant's Motion to Dismiss brought under Rule 12(b)(6) so as to allow the Parties to conduct further discovery. In support of their respective Motions for Summary Judgment, the Parties submitted supporting arguments and documentation. The Court has now had the opportunity to review these materials. Based upon this review, the Court, for the reasons set forth below, finds that the Plaintiff's Motion for Summary Judgment should be Denied. The Defendant's Motion for Summary Judgment will be Granted in Part and Denied in Part.

Lonnie Miller, et al. v. Federal Deposit Ins. Co.
Case No. 08-3345

## FACTS

On February 7, 2008, the Debtors, Lonnie and Susan Miller (hereinafter the "Debtors"), filed a petition in this Court for relief under Chapter 12 of the United States Bankruptcy Code. At the time they filed for bankruptcy relief, the Debtors represented that they were solvent, having assets worth $792,334.71 and liabilities of $663,393.73. Of the Debtors' liabilities, $604,215.70 represented secured claims; the remaining $59,178.03 represented unsecured, nonpriority claims.

Prior to filing for bankruptcy relief, the Debtors had executed a number of notes in favor of the Oakwood Deposit Bank Company. Relevant in this proceeding are three transactions:

On May 24, 1996, the Debtor, Lonnie Miller, executed a note in the amount of $22,305.72 to purchase an item of farm machinery, providing the lender with a security interest in the farm implement. Thereafter, a UCC financing statement was filed, perfecting the lender's interest. This financing statement later lapsed pursuant to O.R.C. § 1309.515(C).

On December 29, 1999, the Debtors executed a note and mortgage for the sum of $139,094.15. On the same date, the Debtors executed a note in the amount of $22,305.72, providing the lender with a security interest in all their farm equipment. Thereafter, a UCC financing statement was filed, perfecting the lender's interest in the farm equipment. As with the earlier security interest, this financing statement later lapsed pursuant to O.R.C. § 1309.515(C).

Subsequent to the execution of these notes, the Defendant, the Federal Deposit Insurance Corporation (hereinafter the "FDIC"), was appointed receiver of the lender, the Oakwood Deposit Bank Company. The appointment of the FDIC as a receiver for THE Oakwood Deposit Bank was precipitated, at least in part, by the conduct of its CEO, Mark Steven Miller, who later plead guilty to charges for money laundering and embezzlement. As receiver, the FDIC re-filed financing

Page 2

Lonnie Miller, et al. v. Federal Deposit Ins. Co.
Case No. 08-3345

statements for those two transactions regarding the Debtors' farm equipment. Both the financing statements were filed on November 28, 2007, a period within 90 days of the commencement of the Debtors' bankruptcy case.

The FDIC has multiple claims in this case, two of which are relevant in the proceeding: Claim Numbers 12 and 16. Claim number 12, concerning the mortgage and note, sets forth an original balance of $139,094.15, and $87,496.18 in accumulated interest, for a total of $226,563.33. Claim number 16, concerning the $22,305.72 equipment note executed contemporaneously with the mortgage note, sets forth an outstanding balance of $17,322.71.

On November 7, 2008, the Debtors commenced this adversary proceeding against the FDIC seeking three overall forms of relief: (1) A reduction of the Defendant's claim against the Plaintiffs' bankruptcy estate; (2) the avoidance of certain transfers made to the Defendant on account of the transfers being preferential for purposes of 11 U.S.C. § 547; and (3) the voiding of liens asserted by the FDIC against estate property. Each of these matters will be addressed in order.

## DISCUSSION

For purposes of jurisdiction, the matters before the Court concern the liquidation of a claim against the estate, a determination of whether certain prepetition transfers are preferential for purposes of 11 U.S.C. § 547(b) and the determination of the validity of liens asserted against the estate. 28 U.S.C. § 157(b)(2)(B)/(F)(K). As such, the matters before the Court are core proceedings over which this Court has jurisdiction to enter final orders and judgments. 28 U.S.C. § 157(b)(1).

Page 3

Lonnie Miller, et al. v. Federal Deposit Ins. Co.
Case No. 08-3345

## Claim of the FDIC

The Debtors' first request for relief involves the mortgage note executed on December 29, 1999. It is the Debtors' position that the original balance of this note should be set at $85,782.83, representing a reduction of $53,311.32. According to the Debtors, this adjustment to the claim of the FDIC is necessary because the actual consideration received by the Debtors was just $85,782.83, not $139,094.15 as represented by the face value of the mortgage note.

The mortgage note at issue in this matter was executed in Ohio; thus Ohio law applies when determining the amount and validity of the note. *Butner v. United States*, 440 U.S. 48, 57, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (state law generally governs the substance of claims). Under Ohio law, it is a "long-held principle that parties to contracts are presumed to have read and understood them and that a signatory is bound by a contract that he or she willingly signed." *Preferred Capital, Inc. v. Power Engineering Group, Inc.*, 112 Ohio St.3d 429, 432, 860 N.E.2d 741 (2007). Also, a contract that is valid on its face will be presumed to be valid in all other respects. Consequently, it is recognized that "ordinarily a party asserting the invalidity of a contract bears the burden of proving a defense to it." *Fletcher v. Fletcher*, 68 Ohio St.3d 464, 467, 628 N.E.2d 1343 (1994).

For their burden, the Debtors do not deny that they signed the mortgage note; nor do the Debtors take issue with the fact that facially the original balance of the mortgage note was $139,094.15. Instead, for their position that the consideration extended on the mortgage note was in actuality only $85,782.83, the Debtors called attention to the following:

First, the Debtors pointed to the stated purpose of their mortgage note with the Oakwood Bank, as well as the purpose expressed in the contemporaneously executed equipment note. In both these notes, it was set forth that their stated purpose was to "Pay-Off" existing business debts. The facts in this regard are not disputed.

Page 4

**Lonnie Miller, et al. v. Federal Deposit Ins. Co.**
**Case No. 08-3345**

On July 19, 1999, approximately five months prior to the Debtors' execution of the mortgage and equipment notes, the Oakwood Deposit Bank satisfied a third-party mortgage debt owed by the Debtors in the amount $85,782.83, and a third-party equipment loan for which the Debtors were liable in the amount of $22,305.72. According to the Debtors, no additional consideration was received.

As evidentiary support for their position, the Debtors pointed to the testimony taken of the Debtor, Mr. Miller, during discovery. In this testimony, Mr. Miller explained that he was initially unaware of the loan balance on the mortgage note, recalling that in July of 2009, he signed a number of documents in blank with the understanding that Mark Steven Miller, the former CEO of the Oakwood Deposit Bank, would handle the details of repaying, with the proceeds from the mortgage note, a preexisting obligation secured against their real property. (Doc. No. 30, at pg. 13).

The response of the FDIC is straightforward: The Debtors should be held to the unambiguous terms of the mortgage note, which set forth an original principal balance of $139,094.15. As support for this position, the FDIC raised two affirmative defenses: laches and the statute of frauds as provided in 12 U.S.C. § 1823(e).[1] On the matter of the original principal balance due on the mortgage note, each of the Parties seeks summary judgment.

The standard when addressing a motion for summary judgment is set forth in Federal Rule of Civil Procedure 56(c), which is made applicable to this proceeding by Bankruptcy Rule 7056. It provides for in part: A party will prevail on a motion for summary judgment when "[t]he pleadings,

---

[1] "No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation . . ."

Page 5

**Lonnie Miller, et al. v. Federal Deposit Ins. Co.**
**Case No. 08-3345**

depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In making this determination, the Court is directed to view all the facts in a light most favorable to the party opposing the motion; similarly, all doubts should be resolved in favor of the party against whom judgment is sought. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586-588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In addition, in situations such as this where the Parties have each filed Motions for Summary Judgment, the Court must consider each motion separately, since each party, as a movant for summary judgment, bears the burden of establishing both the nonexistence of genuine issues of material fact, and that party's entitlement to judgment as a matter of law. *French v. Bank One, Lima N.A. (In re Rehab Project, Inc.)*, 238 B.R. 363, 369 (Bankr. N.D.Ohio 1999).

Under this standard, summary judgment is not considered appropriate where, to adjudicated an issue in controversy, the trier-of-fact will be required to assess a witnesses' credibility. *F.D.I.C. v. Jeff Miller Stables*, 573 F.3d 289, 295 (6th Cir. 2009). However, where live testimony will add nothing to a party's case, the entry of summary judgment is proper. As against the Debtors, the Court finds this to be the case so that live testimony will add nothing to successfully controvert that the amount originally owed by the Debtors on their mortgage note is represented by the amount set forth therein. That is, even accepting that the Debtor, Mr. Miller, will convincingly testify that he signed the mortgage note in blank, and that he believed the note was for only $85,782.83, such evidence is legally insufficient in this matter to refute that the consideration actually received was $139,094.15, as represented by the face value of the note.

Particularly noticeable is the paucity of financial records offered by the Debtors surrounding the transaction in question. Thus, even in giving the Debtors the benefit of the doubt, there exists a glaring deficiency with their position: Any finding that the Debtors did not receive the full

Page 6

**Lonnie Miller, et al. v. Federal Deposit Ins. Co.**
Case No. 08-3345

$139,094.15 in consideration as evidenced by the mortgage note is not supported by corroborating evidence, a necessity when seeking to overcome the presumption of validity afforded to an otherwise facially valid document.

To explain this, the Debtors put forth that many of their financial records were destroyed in a fire. The Debtors also raised the specter of fraud in this case, noting that the former CEO of the Oakwood Bank plead guilty to money laundering and embezzlement. In this Court's assessment, however, these circumstances do not corroborate the Debtors' position. Instead, the Debtors' actions (or inactions) speak louder than words.

The Debtors executed the mortgage note to the Oakwood Bank late in 1999. Yet, the Debtors did not seek to dispute the mortgage note until after they filed for bankruptcy relief in 2008. Given this long interval of time, the Court finds it hard to believe that the Debtors did not receive any statement or document from the Bank which would have alerted them to the supposed discrepancy with their loan. Even if not the case, the difficulty caused by the destruction of the Debtors' financial records should not be placed upon the FDIC. In this regard, it is noted that this Court had previously denied a motion brought by the FDIC to dismiss so as to afford the Debtors the opportunity to obtain financial records (or evidence thereof) from other sources.

Finally, the Court rejects the Debtors' implied assertion that, as with the contemporaneously executed equipment note, it should be assumed that a one-to-one correlation exists between the prior third-party obligation which was satisfied with the proceeds from the mortgage note. In this way, it does not strike this Court as unusual that the Debtors would have received additional consideration for their own use. This frequently occurs; a debtor refinances a preexisting obligation, obtaining in the transaction additional consideration to be used for other needs.

Page 7

Consequently, for all these reasons, it would be pure speculation to assume that the Debtors did not receive from the Oakwood Bank consideration of $139,094.15 as evidenced by the mortgage note. Such speculation, however, is simply insufficient to overcome the presumption that is afforded to the terms of an otherwise facially valid contract. Consequently, as a purely evidentiary matter, the Court is not persuaded that the Debtors' did not receive the full value of the consideration represented by the mortgage note dated December 29, 1999. Accordingly, as set forth in claim number 12, the FDIC will be allowed a secured claim in the amount of $226,563.33, representing the original balance of the note, $139,094.15, and $87,496.18 in accumulated interest.

### Preferential Transfer 11 U.S.C. § 547

The next issue before the Court on the Parties' respective motions for summary judgment concerns two alleged preferential transfers made by the FDIC. In their complaint, the Debtors allege that the financing statements re-filed by the FDIC for the two security agreements executed by the Debtors, dated May 24, 1996 and December 29, 1999, are preferential transfers and subject to avoidance under 11 U.S.C. § 547(b).

A preferential transfer occurs when a debtor favors one creditor over another by paying that creditor to the detriment of other creditors. Preferences are treated with disfavor in bankruptcy because they contradict the fundamental bankruptcy policy of ensuring the equitable distribution of a debtor's nonexempt assets among similarly situated creditors. *In re Wheeling Pittsburgh Steel*, 360 B.R. 649, 651 (Bankr. N.D.Ohio 2006). To this end, bankruptcy law provides for the avoidance of prepetition transfers that qualify as preferential under § 547.

The party moving for the avoidability of a prepetition transfer under § 547 bears the burden to establish that the transfer was preferential within the meaning of statute. 11 U.S.C. § 547(g). The

**Lonnie Miller, et al. v. Federal Deposit Ins. Co.**
Case No. 08-3345

Bankruptcy Code defines an avoidable preferential transfer according to five elements, as set forth in § 547(b):

> Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property–
>
> > (1) to or for the benefit of a creditor;
> >
> > (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> >
> > (3) made while the debtor was insolvent;
> >
> > (4) made–
> >
> > > (A) on or within 90 days before the date of the filing of the petition; or
> > >
> > > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> >
> > (5) that enables such creditor to receive more than such creditor would receive if–
> >
> > > (A) the case were a case under chapter 7 of this title;
> > >
> > > (B) the transfer had not been made; and
> > >
> > > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

While this provision provides standing to only a bankruptcy trustee to bring an action to avoid a preferential transfer, a debtor operating under Chapter 12 of the Bankruptcy Code is conferred with the powers of a trustee and is therefore entitled to bring an action to avoid a preferential transfer under § 547(b). 11 U.S.C. § 1203.

Page 9

By definition, an avoidable preference under § 547(b) requires the existence of a transfer of a debtor's interest in property. This matter, of whether there has been a transfer of a property interest of a debtor, is governed in part by federal law and partly by state law. *Field v. Lebanon Citizens Nat'l Bank (In re Knee)*, 254 B.R. 710, 713 (Bankr. S.D.Ohio 2000), *citing Barnhill v. Johnson*, 503 U.S. 393, 397-98, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). First, whether an interest has been transferred is controlled by federal bankruptcy law. *In re Knee*, 254 B.R. at 713. But whether a debtor even has an interest in property is determinated by applicable nonbankruptcy law, here Ohio law. *Id.*

Placed within this context, the FDIC acknowledged that its financing statement, covering the security interests it holds in the Debtors' farm equipment, lapsed under Ohio law, pursuant to O.R.C. § 1309.515(C). This provision provides:

> The effectiveness of a filed financing statement lapses on the expiration of the period of its effectiveness unless, before the lapse, a continuation statement is filed pursuant to division (D) of this section. Upon lapse, a financing statement ceases to be effective, and any security interest or agricultural lien that was perfected by the financing statement becomes unperfected, unless the security interest is perfected otherwise. If the security interest or agricultural lien becomes unperfected upon lapse, it is deemed never to have been perfected as against a purchaser of the collateral for value.

For purposes of this provision, the FDIC also acknowledged that, although re-perfecting the security interests in its collateral, it did so within the 90-day preference period provided in § 547(b)(4)(A), *supra*.

A transfer, for purposes of bankruptcy law, is defined very broadly, and includes "the creation of a lien" as well as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property." 11 U.S.C. § 101(54)(A)/(D). It follows, therefore, that since a lapsed financing statement ceases to be effective under O.R.C. § 1309.515(C), and results in an unperfected lien, the re-perfection of the lien qualifies as a transfer

Page 10

**Lonnie Miller, et al. v. Federal Deposit Ins. Co.**
Case No. 08-3345

under bankruptcy law. Taken then to its logical conclusion, and one which is widely accepted,[2] when a creditor re-perfects its security interest in a debtor's property, after the original perfection has lapsed, the re-perfection of the security interest potentially constitutes a preferential transfer of property, avoidable under § 547(b).

It is on this basis by which the Debtors seek to avoid the FDIC's re-perfection of its security interest in the Debtors' farm equipment. In opposition thereto, the arguments put forth by the FDIC did not take direct issue with the preferential effect the refiling of a financing statement may have on a creditor's security interest. Instead, the FDIC, pointing to § 547(b)(5), takes the position that its re-perfected security interests are not preferential because the Debtors have not sustained their burden of showing that all the elements of a preferential transfer have been met.

Section 547(b)(5), *supra*, requires that a party seeking to avoid a preferential transfer show that, as a result of the transfer, the creditor received more than it would have if the case were a chapter 7 liquidation case and the disputed transfer had not been made. *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 464 (6th Cir.1991). From this test, these conclusions follow.

First, had the disputed transfers not been made, whereby the FDIC re-perfected its security interests within the preference period, the claims of the FDIC would be treated as unsecured. *See* 11 U.S.C. § 544(a)(1) (allowing trustee to avoid unperfected interests in property). What is more, given

---

[2] *In re Hyperion Enterprises, Inc.*, 158 B.R. 555, 565 (D.R.I. 1993), *citing In re Karisda, Inc.*, 90 B.R. 196 (Bankr. D.S.C. 1988). *See also In re Provident Hosp. & Training Ass'n*, 79 B.R. 374, 378-79 (Bankr. N.D. Ill. 1987) (as applied to § 547, where the perfection of a security interest lapses, a transfer is deemed to have occurred at time of reperfection); *In re Abell*, 66 B.R. 375, 381 (Bankr. N.D. Miss. 1986) (when a perfected security interest lapses, a transfer under § 547 occurs upon the date of filing of the second financing statement).

Page 11

the Bankruptcy Code's priority scheme, a prepetition transfer made to an unsecured creditor will normally enable that creditor to receive more than other similarly situated creditors. In a case construing § 547(b)(5), the Sixth Circuit Court of Appeals explained: "[u]nless the estate is sufficient to provide a 100% distribution, any unsecured creditor who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation." *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d at 465 (internal parenthetical omitted).

Yet, as also pointed out, if a debtor's estate has sufficient assets to provide a 100% distribution to all unsecured creditors, no preference will exist. Of course, the purpose of the Bankruptcy Code is to provide relief for financially distressed debtors who are unable to meet their monetary obligations. *In re Scheffler*, 86 B.R. 576, 578 (Bankr. W.D.Wis. 1986). Thus, rarely will a debtor's Chapter 7 estate have sufficient assets to pay a 100% distribution to all unsecured creditors. But, this will not be the case where a debtor, at the time they file for bankruptcy relief, is solvent. *In re Liptak*, 304 B.R. 820, 835 (Bankr. N.D.Ill. 2004).

By definition, a debtor who is solvent has sufficient assets to pay all of their claims. In this way, the opposite condition, insolvency, is defined by the Bankruptcy Code as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . ." 11 U.S.C. § 101(32).

Set within this definition, the Debtors' represented that at the time they filed their bankruptcy petition they were solvent, holding property worth $792,334.71, an amount exceeding the sum of $663,393.73 which the Debtors disclosed to be their cumulative liabilities. These representations, besides tending to defeat the necessary requirement for a preference as set forth in § 547(b)(5), also go contrary to the express requirement, as contained in § 547(b)(3), that a debtor actually be insolvent at the time of the alleged preferential transfer.

Page 12

It is recognized that when determining the existence of a preference, a debtor is presumed to be insolvent "during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). At the same time, while the financial figures disclosed by a debtor are not dispositive, they are probative – particularly in this matter since, as the party seeking to establish the existence of a preferential transfer, the financial figures disclosed by the Debtors constitute a statement against interest. *Accord In re Burkett*, 329 B.R. 820, 825, 828 (Bankr. S.D.Ohio 2005) ("a debtor's scheduling of a debt does not constitute an admission by a trustee, but as a sworn statement and admission against interest, it is nevertheless strongly probative of the claim's validity."). At the very least, the financial figures disclosed by the Debtors raise a genuine issue of material fact regarding the existence of a § 547(b) preference, thereby precluding the entry of summary judgment in the Debtors' favor. The same is also true respecting the FDIC's motion for summary judgment.

Against the Debtors' claim that the refiling of its financing statements constituted an avoidable preferential transfer, the FDIC cited to § 547(c)(9) which provides:

> (c) The trustee may not avoid under this section a transfer–
>
>> (9) if, in a case filed by a debtor whose debts are not primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $5,475.

It is the burden of the FDIC, as the party against whom avoidance is sought, to prove the nonavoidability of transfers under subsection (c) of § 547, including § 547(c)(9). 11 U.S.C. § 547(g). As applied to § 547(c)(9), this burden is met by showing that (1) the Debtors' debts were not primarily consumer debts and (2) the aggregate value of the property transferred is less than the statutory threshold which at the time of the transfer in this matter was set at $5,475.[3]

---

[3]

As provided in 11 U.S.C. § 104, this amount is periodically adjusted to reflect changes in the Consumer Price Index.

Page 13

Lonnie Miller, et al. v. Federal Deposit Ins. Co.
Case No. 08-3345

In the case *sub judice*, the position of the FDIC falters on the second element.[4] According to the FDIC, the monetary threshold of § 547(c)(9) has not been exceeded because the financing statement related to at least one of its claims only totals $3,250.66. However, while this may be true, § 547(c)(9) does not speak to claims, but rather looks to the aggregate value of the property transferred. Thus, whatever the value of the claim filed by the FDIC, the issue of § 547(c)(9) is whether the property, at the time of the transfer, was worth more than $5,475.00. At this time, the Court has insufficient evidence to make this determination.

### The validity of liens asserted by the FDIC against estate property

The final issue before the Court on the Parties' respective Motions for Summary Judgment involves the underlying validity of the same two liens just discussed. In the absence of a finding that the above two liens are avoidable as preferential transfers, the Debtors seek to void the liens based upon a defect in their implementation. Specifically, the Debtors put forth that the FDIC should be treated as an unsecured creditor because they did not authorize the filing of the new financing statement. In the Debtors' words, "the FDIC's filing of a new financing statement without the Debtors authorization is violative of Ohio law, does not result in perfection of any security interest and is [sic] therefore the FDIC is not a secured creditor in any equipment." (Doc. No. 28, at pg. 10).

For their position, the Debtors cite to O.R.C. § 1309.516, and the following language:

---

[4] The Debtors, by filing for relief under Chapter 12 of the Bankruptcy Code, have represented that, as mandated by the first element of § 547(c)(9), their debts are not primarily consumer debts. *See* 11 U.S.C. § 101(18) (defining 'family farmer' as an individual whose debt, among other things, is not less than 50% comprised of obligations arising from farming operations.); 11 U.S.C. § 109(f) (limiting Chapter 12 relief to family farms and fisherman); 11 U.S.C. § 101(8) (defining consumer debt as "debt incurred by an individual primarily for a personal, family or household purpose.").

Page 14

**Lonnie Miller, et al. v. Federal Deposit Ins. Co.**
**Case No. 08-3345**

> (A) Except as provided in division (B) of this section, communication of a record to a filing office and tender of the filing fee or acceptance of the record by the filing office constitutes filing.
>
> (B) Filing does not occur with respect to a record that a filing office refuses to accept because:
>
>> (3) The filing office is unable to index the record because:
>>
>>> (a) In the case of an initial financing statement, the record does not provide a name for the debtor;
>>>
>>> (b) In the case of an amendment or correction statement, the record:
>>>
>>>> (i) Does not identify the initial financing statement as required by section 1309.512 or 1309.518 of the Revised Code, as applicable; or
>>>>
>>>> (ii) Identifies an initial financing statement whose effectiveness has lapsed under section 1309.515 of the Revised Code.

In applying this provision, however, the Court is unable to discern how the financing statements re-filed by the FDIC are rendered ineffective on the sole basis that the Debtors did not authorize their refiling. As a preliminary matter, there is simply no evidence, as is required in the opening of § 1309.516(B)(3)(a), that the filing office was unable to index the FDIC's re-filed financing statements because they did not contain the name of the Debtors. As it concerns § 1309.516(B)(3)(b), the Court must agree with the FDIC that its re-filed financing statements do not constitute, within the meaning of the provision, an amendment or correction statement.

Page 15

**Lonnie Miller, et al. v. Federal Deposit Ins. Co.**
Case No. 08-3345

      Amendments and corrections to financing statements are addressed in O.R.C. § 1309.512 and involve the addition or deletion of collateral covered by a security agreement as well as amending the information contained in the financing statement. The filing of an amendment, however, generally "does not extend the period of effectiveness of the financing statement." O.R.C. § 1309.512(B). Contrary to such attributes, the refiling of the financing statements submitted by the FDIC did not seek to amend or correct its originally filed financing statements, but rather sought only reinstate the effectiveness of the financing statements which had lapsed under O.R.C. § 1309.515(C).

      In summation, the Court holds that, based upon the original value of the mortgage note executed by the Debtors, the FDIC shall be allowed a secured claim, denominated in this case as Claim Number 12, in the amount $226,563.33. Summary judgment thus will be entered in favor of the FDIC and against the Debtors on this matter. Neither party, however, is entitled to summary judgment on the issue of whether the refiling by the FDIC of its financing statements constitute preferential transfers for purposes of § 547(b). Finally, the Debtors are not entitled to summary judgment on their claim that the financing statements re-filed by the FDIC are void.

      In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Page 16

Lonnie Miller, et al. v. Federal Deposit Ins. Co.
Case No. 08-3345

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment filed by the Debtors, Lonnie and Susan Miller, be, and is hereby, DENIED.

***IT IS FURTHER ORDERED*** that the Motion for Summary Judgment filed by the Defendant, the Federal Deposit Insurance Corporation, be, and is hereby, GRANTED IN PART and DENIED IN PART.

***IT IS FURTHER ORDERED*** that for Claim Number 12, the Federal Deposit Insurance Corporation is hereby deemed to hold an allowed secured claim in the amount of $226,563.33.

***IT IS FURTHER ORDERED*** that, within 21 days from the entry of this Order, the Debtors report to the Court their position with regards to pursuing their cause of action to avoid alleged preferential transfers made to the Defendant, the Federal Deposit Insurance Corporation.

Dated: March 8, 2010

Richard L. Speer
United States
Bankruptcy Judge

Page 17

# CERTIFICATE OF SERVICE

Copies were mailed this 8th day of March, 2010, to the following parties:

Federal Deposit Insurance Corp
as Receiver of the Oakwood Deposit Bank Co
1910 Pacific Ave
Dallas, TX 75201

Larry L Goodman
Federal Deposit Insurance Corporation
3501 Fairfax Drive
Arlington, VA 22226-3501

Susan M. Miller
Lonnie J. Miller
RR #1
Box 107
Grover Hill, OH 45849

Steven L Diller
124 E Main St
Van Wert, OH 45891

Office of the U.S. Trustee
201 Superior Ave, E, #441
Cleveland, OH 44114

/s/ Robert C.W. Birmingham
Deputy Clerk, U.S. Bankruptcy Court